JAMES ROBERTS, Respondent, v. THE QUINCY, OMAHA & KANSAS CITY RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, April 5, 1892.

**Railroads:** STATUTORY ACTION FOR INJURY TO STOCK: INSTRUCTIONS. An instruction in a statutory action against a railway company for double damages for the killing of stock, which authorizes a recovery without a finding that the stock came upon the railway tracks at a

point where the statute required the company to fence its right of way, is erroneous; and the error is prejudicial when, under the evidence, it is uncertain whether the stock came upon the tracks at such a point.

*Appeal from the Lewis Circuit Court.*—HON. BEN. E. TURNER, Judge.

REVERSED AND REMANDED.

*Jno. P. Butler*, for appellant.

*Blair & Marchand*, for respondent.

BIGGS, J.—This is the second appeal in this case. The opinion on the first appeal (*Roberts v. Railroad*, 43 Mo. App. 287) contains a full statement of the subject-matter of the litigation, which enables us to abbreviate the statement in this opinion. The first count in the petition, under which a recovery was had, is for double, damages under section 2611, Revised Statutes, 1889. It was alleged that two mares and a colt, the property of the plaintiff, came upon the defendant's railroad track where the same passed through inclosed lands, and that the animals were there struck and killed by an engine on the defendant's road. There was also an averment, that the road was not fenced at the point where the horses came upon the track. The plaintiff lived on what is known as the Larue farm, which is separated from the Nunn farm on the west by a traveled road running north and south. The general course of the railroad through these farms is east and west. To the north of the railroad both Larue and Nunn had built fences, thereby forming a lane along which the traveled road extended. At the point where the railroad crossed this road, the defendant had constructed a crossing and cattle-guards on each side. That the horses were killed by an engine or cars on the

defendant's railroad, and that they were found dead on the right of way inside of Nunn's inclosure, just south of the cattle-guard on the north side of the crossing, is not disputed. But where the animals came upon the track, and where they were struck, is under the evidence a matter of serious controversy. The first trial was had, as we understood it, on the theory that the animals came upon the track at the crossing, and were there struck by the engine and carried over the cattle-guard into Nunn's field. That judgment was sought to be upheld upon the ground, that the road between the two farms was only a passway or farm crossing, and that, as it was closed by gates at each end, the land occupied by it, so far as the defendant's duty to fence was concerned, must be regarded as inclosed lands. The uncontradicted evidence showed that the road had been traveled by the public for twenty years, and was so traveled at the time the railroad was constructed. We decided that this road was a *de facto* highway, and that the defendant was under no obligation to fence it.

On the last trial the plaintiff's evidence tended to prove that he turned the animals into his field north of the railroad and adjacent to the Nunn farm, and that he saw nothing more of them until the afternoon, when he found them dead on the railroad right of way. No witness saw the animals killed. Neither was there any direct testimony at what point they came upon the track. The plaintiff recovered the full value of all the animals, but on intimation on motion for new trial, that in the opinion of the court there was no substantial evidence that one of the mares and the colt came on the railroad through Nunn's farm, the plaintiff remitted from the verdict their value as shown by the evidence, and the court entered a judgment for double the value of the other mare. The defendant has appealed.

If the judgment in this case is to be upheld, it must be done upon the ground that the animal, for which there was a final recovery, escaped into Nunn's field at some point along the highway where Nunn's fence was not a lawful fence, and passed from there onto the defendant's railroad, where it was struck and killed. If there was substantial evidence of this (which the defendant challenged by its demurrer to the evidence), and no prejudicial error intervened at the trial, the judgment will have to be affirmed.

The plaintiff testified that all three of the animals were found inside of Nunn's field, just west of the cattle-guard; that one of the mares was found about eight feet from the cattle-guard; the colt about sixteen feet, and the other mare between ninety and one hundred feet. The plaintiff also testified that the latter animal was shod, and that he found her tracks along the railroad between where she was found and the cattle-guard; and that he searched for the tracks of the others, and could not find them. It is conceded that there was no railroad fence through Nunn's land, and there was evidence that Nunn's fence along the lane north of the railroad was not a lawful fence; that there were gaps in it. It is very evident that the mare either came down the lane and was struck at the crossing, or she went into Nunn's field and from thence passed onto the railroad track. If the plaintiff's statement in reference to the tracks is to be believed, the reasonable conclusion would be that the animal came upon the track on the inside of the inclosure. It would seem to have been physically impossible for her to have regained her feet after being carried over the cattle-guard on the cow-catcher. The credibility of this witness was for the jury. If his statement was believed, it furnished evidence of the defendant's liability.

This brings us to the instructions. The plaintiff

asked, and the court gave, the following instruction:
"The court instructs the jury that, if they shall believe
from the evidence in the cause that the mares and colt
of the plaintiff were killed by the engine and cars of the
defendant on February 15, 1889, then and there being
run and managed by the defendant's servants and
employes, at a point or place on said road where the
same ran through inclosed lands or fields, and shall
further believe that, at the place where said mares and
colt got on said defendant's railroad track, the defend-
ant had failed to erect fences along the line of its said
road, and was killed by said defendant's engine and
cars being run as aforesaid, by reason of such failure to
so fence its said road as aforesaid, then the jury should
find for the plaintiff, and assess his damages in such
sum as the evidence shall show said mares and colt to
have been worth at the time they were killed." It will
be observed that this instruction failed to tell the jury
that the defendant was not liable for killing the
animals, unless it was found by the jury that they came
upon the track through Nunn's field. This omission
was fatal, and it has been so held by all the courts in
the state. *Moore v. Railroad*, 81 Mo. 499, 503; *Foster
v. Railroad*, 90 Mo. 116; *Nance v. Railroad*, 79 Mo. 196;
*Wilson v. Railroad*, 18 Mo. App. 258; *Ehret v. Rail-
road*, 20 Mo. App. 251; *Vaughn v. Railroad*, 34 Mo.
App. 141; *Henson v. Railroad*, 34 Mo. App. 636. In
the *Vaughn case* we declined to reverse the judgment
for a like defect in the instructions, for the reason that
the only legitimate inference which could be drawn
from the evidence was that the animal came onto the
track at a point where the defendant ought, and had
failed, to fence. In the case at bar the plaintiff, as to
the horse tracks found by him on the inside of the field,
which is the strong and controlling circumstance in his
favor, was strongly contradicted by his own testimony

on the former trial, which was to the effect that he saw the tracks of the horses in the lane, and said nothing about seeing the tracks of the mare inside of the field. Hence, we conclude that the error in the instruction was prejudicial to the defendant, and must result in a reversal of the judgment.

The evidence, as preserved in this record, is insufficient to establish any liability as to two of the animals. It is quite clear that they came upon the track at the crossing of the highway, and, in order to hold defendant for them, some act of negligence on the part of the persons running the train must have been established. On another trial (unless there are other new developments in the evidence) the recovery should be confined to the animal here in controversy. The jurors should be instructed that to entitle the plaintiff to a judgment they must find that the mare escaped into Nunn's inclosure through a defective fence along the public highway, and from there passed onto the railroad track where she was struck and killed, and that she did not come upon the railroad track at the public crossing, or did not break through Nunn's fence at the cattle-guard of which there was some evidence.

Whether the defendant was under obligation to fence its road where it extended across the traveled road, is no longer a question in the case. We decided that no such obligation existed, and that must be the law of the case. We make this suggestion in view of the fact that the bulk of the evidence in the present record was directed to that question, all of which was irrelevant.

With the concurrence of the other judges, the judgment of the circuit court will be reversed, and the cause remanded. It will be so ordered.